IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| GLYNN ALAN REGISTER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO.: 1:17-cv-199-WKW-GMB |
| | ) | |
| MARY ELIZABETH WOMBLE, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE</u>

Pursuant to 28 U.S.C. § 636(b)(1), this case was referred to the undersigned United States Magistrate Judge for review and submission of a report with recommended findings of fact and conclusions of law. Doc. 5.  On April 6, 2017, Plaintiff Glynn Alan Register filed this lawsuit against a host of individual defendants citing diversity of citizenship as the sole basis for federal jurisdiction. Doc. 1.  Now before the court are motions to dismiss filed by Defendants Justin G. Hovey (Doc. 20), Mary Elizabeth Womble (Doc. 27), and Richard and Kimberly Tate (Doc. 28).  After careful consideration of the parties' submissions and the applicable law, the undersigned Magistrate Judge recommends that, to the extent they challenge the basis for this court's subject-matter jurisdiction, the motions (Docs. 20, 27 & 28) are due to be GRANTED, and that this lawsuit be DISMISSED with prejudice for a lack of subject-matter jurisdiction.[1]

---

[1] Because the court determines that it lacks subject-matter jurisdiction, it will not make any recommendation regarding the defendants' motions under Rule 12(b)(6). *See Boda v. United States*, 698 F.2d 1174, 1177 n.4

## I. FACTUAL AND PROCEDURAL BACKGROUND

Register brought suit on April 6, 2017.  He filed an amended complaint on April 28 that omits any claims against former defendant George Rodney Saxon, whose presence would have destroyed diversity jurisdiction. *See* Docs. 1 & 16.   This amended complaint names Mary Elizabeth Womble, Justin G. Hovey, Richard Tate, Kimberly Tate, James Alan Mitcham, and Lauren Patricia Mitcham as defendants. Doc. 16 at 2.  Register alleges that the amount in controversy exceeds $75,000 and that all defendants are citizens of a different state than Register, who is a citizen of Georgia. Doc. 16 at 1 & 3.  Register invokes Rule 60(d) of the Federal Rules of Civil Procedure, asking the court to "set aside a judgment for fraud on the court." Fed. R. Civ. P. 60(d)(3); Doc. 16 at 4.

Register's lawsuit is an attempt to contest both the will and testamentary transfers of two properties formerly owned by his father, Mandalay Zadok Register ("Zadok"). Zadok passed away in Dothan, Alabama, on September 3, 2013. Doc. 16 at 4.  Register's chief complaint is that Zadok executed a will and made other testamentary dispositions without the requisite testamentary capacity—all pursuant to a fraudulent scheme orchestrated by Register's wife, Womble. *See* Doc. 16 at 5–10.   Specifically, Register contends that Zadok began to experience memory lapses and other medical problems in the Summer of 2012 before moving into the home of his then-girlfriend, Womble, in September. Doc. 16 at 5.  According to Register, Zadok was diagnosed with dementia in December of 2012. Doc. 16 at 6.  On February 11, 2013, Register discovered that Zadok

---

(11th Cir. 1983) ("Where dismissal can be based on lack of subject matter jurisdiction and failure to state a claim, the court should dismiss on only the jurisdictional grounds.").

had sold a piece of property located in Columbus, Georgia (the "Georgia property"), to George Saxon, and had later married Womble. Doc. 16 at 6. Register, concerned about the state of Zadok's mental and physical health, requested the Probate Court of Houston County, Alabama (the "Probate Court"), to order a health evaluation of Zadok for the purposes of determining his testamentary capacity and assessing his need for a guardianship or conservatorship arrangement. Doc. 16 at 6.

The evaluation was performed by Defendant Hovey, a medical doctor who reported that Zadok's medical condition was "stable" following treatment for renal failure. Doc. 16 at 7. Register contends that this report is "false and fabricated," and that Womble and Hovey "fraudulently concealed, hid, and misrepresented their knowledge of any type of Dementia and Memory Loss suffered by Zadok Register in order to obtain a favorable judgment from the Probate Court concerning the [sale of the Georgia property] and Zadok Register's conservatorship and/or guardianship." Doc. 16 at 7. After Hovey's report, however, Register suspended his efforts to challenge the sale of the Georgia property in the Probate Court. Doc. 16 at 7.

On May 20, 2013, Zadok executed a deed of survivorship to Womble covering another property (the "Florida property"). Doc. 16 at 8. According to Register, Womble used Hovey's fraudulent report to obtain the services of an attorney to prepare the deed. Doc. 16 at 8. The following week, on May 28, Zadok executed a will naming Womble his sole beneficiary. Doc. 16 at 8. Register believes that Hovey's report was also used to retain an attorney to prepare the will. Doc. 16 at 8. According to Register, Zadok "suffered from physical weakness, frailty, and lacked sufficient mental capacity to execute" the deed of

survivorship and will. Doc. 16 at 8.

After Zadok's death but before Register became aware that Zadok had executed a will naming Womble as his sole beneficiary, Register filed a petition for letters of administration in the Probate Court, which the court granted on November 12, 2013. *See* Doc. 1-10; Doc. 16 at 9.   However, after learning that the Probate Court appointed Register's attorney as the personal representative of Zadok's estate, Womble filed a petition to set aside the letters of administration on January 14, 2014. *See* Doc. 1-11; Doc. 16 at 9.  The Probate Court denied the request because no will had been probated. Doc. 16 at 9.  On February 4, the Probate Court granted Womble's petition to probate the will that named her as Zadok's sole beneficiary, and the will was admitted to probate on March 11. Doc. 16 at 9; Doc. 1-12.  One week later, the Probate Court granted Womble's request to set aside the letters of administration previously issued to Register's attorney. Doc. 16 at 9.  Thereafter, as the sole beneficiary, Womble stood to collect the full proceeds of Zadok's will, and Register began a campaign to contest its validity. *See* Doc. 16 at 9–10.

Register first contested Zadok's will and the two deed transfers on April 14, 2014, in the Circuit Court of Houston County, Alabama (the "Circuit Court"). *See* Doc. 1-14; Doc. 16 at 10.  Register's first will contest failed with the Circuit Court dismissing the suit for his failure to join indispensable parties. *See* Doc. 1-16; Doc. 16 at 10.  Approximately one year later, on April 1, 2015, Register attempted to amend his state-court complaint to name additional defendants. Doc. 16 at 10.  The Circuit Court again issued an order dismissing the complaint. *See* Doc. 1-16; Doc. 16 at 10.  Yet another year passed, and on April 21, 2016, Register filed another suit in the Circuit Court, this time seeking only to

void the deeds to the Florida and Georgia properties. *See* Doc. 1-17; Doc. 16 at 10. Again, the Circuit Court dismissed his suit.[2] Doc. 16 at 10. Finally, in a last-gasp attempt to contest the deed transfers, Register requested that the Circuit Court set aside its prior judgment, alleging that it lacked subject-matter jurisdiction over the Florida and Georgia properties because they were located out of state. *See* Doc. 16 at 10; Doc. 20-2. The Circuit Court denied this request on July 19, 2016. *See* Doc. 1-18; Doc. 16 at 10.

Register asks the court to make Zadok's estate "whole and complete" and to void his will. Doc. 16 at 11. Register also requests $77,255—the proceeds from the sale of a property that was "fraudulently" awarded to the defendants. Doc. 16 at 11. He seeks an additional $22,750, representing the amount supposedly held in Zadok's checking account. Doc. 16 at 12. Finally, he asks the court to void the two deed transfers and to award him attorney's fees, costs of court, and other expenses incurred in the litigation of his lawsuits in both the Circuit Court and this court.

## II. STANDARD OF REVIEW

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a motion to dismiss for lack of subject-matter jurisdiction may be based on either a facial or factual attack. *McElmurray v. Consol. Gov. of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). In a facial attack, the court evaluates the complaint to determine whether it provides

---

[2] On this occasion, the Circuit Court concluded that Register did not have standing to bring suit because, due to a residuary clause in the will, "under any conceivable verdict or disposition of this case, Womble will retain the Florida property and Saxon will retain the Georgia property. A verdict in [Register's] favor at most would only serve to vindicate a personal belief and not a legally protected interest." Doc. 20-1 at 4. This court may take judicial notice of the Circuit Court's orders. *See, e.g.*, *United States ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 811 n.4 (11th Cir. 2015) ("Courts may take judicial notice of publicly filed documents, such as those in state court litigation, at the Rule 12(b)(6) stage.").

a sufficient "basis of subject matter jurisdiction, and the allegations in [the] complaint are taken as true for the purposes of the motion." *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1335–36 (11th Cir. 2013); *see also Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) ("On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion—the court must consider the allegations of the complaint to be true.").

## III.  DISCUSSION

Here, the defendants have brought a facial attack on the stated basis for this court's subject-matter jurisdiction. *See generally* Docs. 20, 27 & 28.  Denied repeatedly by the state courts, Register now seeks to contest the validity of his father's will and testamentary transfers in federal court.  However, even accepting the allegations in the complaint as true, federal jurisdiction is lacking because Register's claims run headlong into the *Rooker-Feldman* doctrine.

"The *Rooker-Feldman* doctrine makes clear that federal district courts cannot review state court final judgments because that task is reserved for state appellate courts or, as a last resort, the United States Supreme Court." *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009).  It bars federal jurisdiction in "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). "The doctrine applies both to federal claims raised in the state court and to those inextricably intertwined with the state court's judgment." *Casale*, 558 F.3d at 1260

(citation and internal quotation marks omitted).  In this context, "inextricably intertwined"
means that a claim in federal court "would effectively nullify the state court judgment, or
it succeeds only to the extent that the state court wrongly decided the issues." *Id.* (citations
and internal quotation marks omitted).

The doctrine does not prohibit a "district court from exercising subject-matter
jurisdiction simply because a party attempts to litigate in federal court a matter previously
litigated in state court." *Exxon Mobil*, 544 U.S. at 293.  Furthermore, the Supreme Court
has cautioned that "the doctrine has sometimes been construed to extend far beyond the
contours of [its namesake] *Rooker* and *Feldman* cases, overriding Congress' conferral of
federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and
superseding the ordinary application of preclusion law pursuant to 28 U.S.C. § 1738." *Id.*
at 283.  Thus, *Rooker-Feldman* is a "limited doctrine." *See Lance v. Dennis*, 546 U.S. 459,
464 (2006) ("Neither *Rooker* nor *Feldman* elaborated a rationale for a wide-reaching bar
on the jurisdiction of lower federal courts, and our cases since *Feldman* have tended to
emphasize the narrowness of the *Rooker-Feldman* rule.").

The *Rooker-Feldman* doctrine—even applied narrowly—bars Register's suit.  The
sole purpose of Register's claims before this court is to void the will and testamentary
transfers of his late father.  Of course, this was also his purpose in the several challenges
he raised in the Probate and Circuit Courts beginning in 2014.  Register's purported "fraud"
is Hovey's report, which Womble then employed during the state-court proceedings to
demonstrate Zadok's testamentary capacity. *See, e.g.*, Doc. 16 at 7 ("The Hovey Letter is
Extrinsic Fraud, perpetuated to obtain a judgment.").  Because Register was neither a

named beneficiary under the will nor a recipient of either property transfer, he claims to have been wrongfully excluded from the ownership of both properties and the proceeds of the will. *See* Doc. 16 at 11–12.

The Probate and Circuit Courts each rendered a final judgment as to the validity of Zadok's will and the testamentary transfers before proceedings commenced in this court— and ruled against Register on each occasion. *See, e.g.*, Docs. 1-16, 1-18 & 20-1 ("The [state] courts have conclusively and with finality upheld the validity of the will of Mandalay Zadok Register.").  And by asking this court to void the will and deed transfers, Register not only brings the exact claims in federal court that he brought in state court, but also seeks to "effectively nullify" the prior state-court judgments. *See Valentine v. BAC Home Loans Servicing, L.P.*, 635 F. App'x 753, 757 (11th Cir. 2015) (holding that *Rooker-Feldman* barred jurisdiction where "the only way to vindicate the [plaintiffs'] claims—all of which allege that the state court litigation turned on fraudulent evidence—is to hold that the state court wrongly decided the foreclosure matter by relying on fraudulent evidence"). Even accepting the facts alleged in the complaint as true and in the light most favorable to Register, the *Rooker-Feldman* doctrine bars his claims and deprives this court of subject-matter jurisdiction.

Despite explicitly relying on Rule 60(d) as his mechanism for obtaining relief from the judgments, Register appears to argue that the prior state-court judgments were not actually judgments subject to the *Rooker-Feldman* doctrine because they were obtained through fraud. *See* Doc. 26 at 10.  Like the plaintiffs in the Eleventh Circuit's decision in *Valentine*, Register contends that Womble and Hovey lied about facts material to the state-

court litigation, thus committing intrinsic fraud. *See Valentine*, 635 F. App'x at 757 ("Indeed, the classic examples of intrinsic fraud are fabricated evidence, perjured testimony, and false reports, exactly what the [plaintiffs] complain of in this litigation.") (citation omitted).  The Eleventh Circuit summarily rejected this argument, holding that there is no exception to *Rooker-Feldman* for intrinsic fraud and reasoning that such an exception would "effectively gut the doctrine" because litigants would automatically argue that the underlying state-court proceedings were marred by fraud. *Id.*  The court here—facing nearly identical facts—reaches the same conclusion.

## IV.  CONCLUSION

For the foregoing reasons, the undersigned Magistrate Judge RECOMMENDS that the pending motions (Docs. 20, 27 & 28) be GRANTED and that this lawsuit be DISMISSED with prejudice due to this court's lack of subject-matter jurisdiction.[3]  It is further ORDERED that the parties are DIRECTED to file any objections to the report and recommendation **not later than August 3, 2017**.  Any objections filed must specifically identify the findings in the Magistrate Judge's report and recommendation to which the party is objecting.  Frivolous, conclusive, or general objections will not be considered by the District Court.  The parties are advised that this report and recommendation is not a final order of the court and, therefore, is not appealable.

---

[3] The court concludes that Register, despite proceeding *pro se*, should not be permitted to amend his complaint, as any amendment would be futile and would suffer from the same jurisdictional deficiencies. *See Jenkins v. Walker*, 620 F. App'x 709, 711 (11th Cir. 2015) ("Generally, when a more carefully drafted complaint might state a claim, a district court should give a *pro se* plaintiff at least one chance to amend the complaint before the court dismisses the action."); *see also Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001).

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report and recommendation shall bar the party from a *de novo* determination by the District Court of issues covered in the report and recommendation and shall bar the party from attacking on appeal factual findings in the report and recommendation accepted or adopted by the District Court, except upon grounds of plain error or manifest injustice. *See Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982).

DONE this 20th day of July, 2017.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE